**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE PAPALIOS, | ) | CASE NO. 4:16-cv-2234 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| GENERAL MOTORS, LLC, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This case involves claims asserted under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Specifically, plaintiff George Papalios ("Papalios") challenges the seniority date he was assigned by defendant General Motors, LLC ("GM") upon his hire. Papalios alleges that GM breached a 2007 agreement addressing the hiring of employees from three companies, and that defendant Local No. 1714 ("Local 1714") of the United Automobile, Aerospace, Agricultural Implement Workers of America, Amalgamated Union ("UAW") breached a duty of fair representation in handling a grievance associated with his seniority date assignment under the agreement.

Before the Court are two motions for summary judgment: one filed by Local No. 1714 and a second motion filed by GM. (Doc. No. 32 ["Local 1714 MSJ"]; Doc. No. 34 ["GM MSJ"].) Papalios filed an omnibus response opposing both motions (Doc. No. 38 ["Papalios Opp'n"]), and each defendant filed a reply. (Doc. No. 41 ["Local 1714 Reply"]; Doc. No. 42 ["GM Reply"].) For the reasons that follows, the motions for summary judgment are granted, and this case is dismissed.

## I. BACKGROUND

In October 2005, Delphi Corporation ("Delphi") filed for Chapter 11 bankruptcy, and, as a result, was forced to close several of its plants. *In re Delphi Corp.*, Bankr. No. 05-44481 (RDD), 2008 WL 3486615 (Bankr. S.D.N.Y. Aug. 11, 2008). As part of the reorganization, Delphi entered into an agreement with GM and the International Union of Electrical Workers ("IUE"). (Doc. No. 34-2 (IUE-Delphi-GM Memorandum of Understanding Delphi Restructuring ["MOU"]), beginning at 797.[1]) Attachment G to the MOU, entitled "Special Employee Placement Opportunities" ("SEPO"), provided specific opportunities to employees of Delphi and two other companies—ACC and Guide—who were members of IUE to seek employment with GM at certain facilities. (MOU, Att. G, SEPO, beginning at 871.) Relevant to the present summary judgment motions, the SEPO provided:

> Employees seeking employment opportunities shall be made in conjunction with their Delphi seniority (highest seniority first) provided the applicant is able and qualified to perform the available work. Individuals applying for this Special Employee Placement Opportunities will be selected from an integrated list of all applicants from ACC, Guide and Delphi after all [GM], Delphi, Guide, ACC and other individuals that have a contractual right to openings within [GM] have been afforded an opportunity to fill the available opening pursuant to the terms and conditions of the GM – UAW Employment Placement Provisions. *These IUE-CWA Delphi applicants will be hired in a ratio that is on a one for one basis with a "New Hire" applicant.*

(SEPO, § 2, at 871, emphasis added.) The SEPO also vested GM with sole discretion to develop and control the hiring process (subject only to restrictions not raised in this case):

> GM will develop a process by which eligible Delphi employees can express their interest in being considered for employment opportunities with GM as openings that are designated as available for this opportunity arise. This process will be developed by GM . . . .

---

[1] Unless otherwise noted, all page number references are to the page identification number generated by the Court's electronic docketing system.

(*Id*., § 12, at 873.)

It is undisputed that GM developed and implemented a plan through which employees of Delphi, ACC, and Guide could express interest in employment with GM. (Doc. No. 34-2 (Affidavit of Joseph Wilson ["Wilson Aff."]) ¶ 7.) On or about January 12, 2008, and pursuant to the SEPO, GM's Lordstown plant issued a requisition indicating that it had 900 job openings to fill. (*Id*. ¶ 8.) Hiring at the Lordstown facility took place between June 12, 2008 and July 7, 2008.) (*Id*. ¶ 9.)

Papalios was one of the Delphi employees who sought employment at the Lordstown facility. (Doc. No. 1 (Complaint ["Compl."]) ¶ 5; Doc. No. 35-1 (Deposition of George Papalios ["Papalios Dep."]) at 14, 29.[2]) While employed with Delphi, Papalios was a member of Local 717 of the IUE ("Local 717"). Neither the IUE nor Local 717 is a party to this litigation. GM hired Papalios on June 30, 2008, and it is this June 30, 2008 date, as opposed to Papalios' Delphi seniority date, that presently controls his employment with GM. (*Id*. at 17.) Further, Papalios concedes that he understood when he was hired by GM that GM considered June 30, 2008 to be his seniority date.[3] (*Id*.)

When he began his employment with GM, Papalios was represented by the UAW, Local 1112 ("Local 1112"). (*Id*. at 27.) Local 1112 and its international, UAW, are also not parties to this lawsuit. On November 17, 2008, Papalios filed a grievance with Local 1112. (*Id*. at 27, 86;

---

[2] All page number references to Papalios' deposition testimony are to the page number assigned by the court reporter.

[3] Even though he also concedes that there is nothing in the SEPO that would indicate that IEU would seek more favorable terms for its members, and he further admits that he was never made any promises that he would be entitled to more than the SEPO provided, Papalios also insists, without any support, that he believed that "the union was going to fight to get us whatever we were entitled to." (Papalios Dep. at 17-18, 19.)

Papalios Dep., Ex. L ["2008 Grievance"].) The record is sketchy as to the details of this initial charge, but, for purposes of summary judgment, the parties agree that Papalios used this grievance to challenge his GM seniority date. (Papalios Dep. at 86.) According to Papalios, the grievance was denied by GM, and he appealed to the Local 1112 membership. (*Id*. at 27-28.) Papalios claims that the union shop chairman for Local 1112 advised him that the matter was for the international to resolve, and that this individual assured him that Local 1112 would send his grievance to the UAW for its consideration. (*Id*. at 28.) Papalios never received a response from the UAW, and he personally took no further action on the grievance. (*Id*.)

Instead, in 2010, Papalios applied for a voluntary transfer to the Lordstown's stamping facility located on the west side of the plant. (*Id*. at 11, 28-29.) The transfer resulted in his union representation changing from Local 1112 to Local 1714. (*Id*. at 11-12, 28.) It is undisputed that Local 1714 is also associated with the UAW.

Once again, the record turns cloudy. Papalios claims that at some point after he became a member of Local 1714, he "asked Local 1714 officials about the status of his grievance (presumably the 2008 Grievance)," as "Local 1714 voluntarily assumed responsibility for pursuing Papalios' grievance." (Papalios Opp'n at 1096.) He maintains that he was assured that the grievance was being considered at the international level, but when he called some unidentified person at the UAW, he learned that the UAW was unaware of any such grievance. (Papalios Dep. at 37.) Papalios then filed an unfair labor practice ("ULP") charge with the National Labor Relations Board ("NLRB"). (*Id*.) According to Papalios, he agreed to withdraw the ULP when Local 1714 promised to help him file a new grievance. (*Id*. at 37, 54.)

On October 28, 2011, almost three and one half years after beginning his employment at

GM, Papalios filed his second grievance, this time with Local 1714, based on his perception that GM should have hired him earlier in the 2008 hiring process. (*Id*. at 50; Papalios Dep., Ex. G ["2011 Grievance"].) Specifically, Papalios charged GM "with a violation of [the] SEPO agreement. [Employees] eligible for transfer from Delphi should have been placed in seniority order among themselves and brought into GM/UAW on a 'one for one' basis . . . ." (2011 Grievance, capitalization omitted.) He demanded that GM "fix" the seniority dates of all Delphi transfers. (*Id*.) The 2011 Grievance represented the second time Papalios attempted to grieve this very same issue, and he admits that he failed to personally pursue the 2008 Grievance through the internal union appeals process to the international level. (Papalios Dep. at 54.)

Local 1714 denied the 2011 Grievance, which Papalios appealed. In a letter dated November 6, 2014, Local 1714's Shop Committee denied Papalios' appeal. (Papalios Dep., Ex. C (Shop Committee Letter) at 939-40.) Papalios then presented his grievance to the Local 1714 membership, which also denied his appeal. (Papalios Dep., Ex. C (December 3, 2014 Letter from Papalios to Local 1714 Recording Secretary) at 938; Papalios Dep. Ex. C (February 10, 2015 Letter from Papalios to UAW President, Dennis Williams) at 935-36.) On December 17, 2015, Papalios received a letter from the office of the president of the UAW. (Papalios Dep., Ex. C (December 17, 2015 Letter from Office of UAW President ["Dec. 17, 2015 Appeal Letter"]), beginning at 932.) In this letter, the administrative assistant to the president advised Papalios that his appeal was denied. Putting aside the fact that the grievance was untimely, as it was filed more than three and one half years after the alleged infraction, the letter made clear that there was no provision in an UAW contract that would permit "a Member or a Local Representative of one plant [to] file a legitimate grievance concerning an allegation that happened in a different plant

location being represented by a different local union." (*Id.* at 933.) The letter further advised that Papalios' request to have his grievance placed back into the grievance procedure was denied. (*Id.* at 934.)

Undeterred, on February 26, 2016, Papalios sent a letter to UAW President Williams requesting that he be allowed to appeal the December 17, 2015 denial to the UAW's Public Review Board. (Papalios Dep., Ex. C (February 23, 2016 Letter to UAW President Williams ["Feb. 23, 2016 Letter"]) at 931.) On March 8, 2016, Papalios' request to appeal to the Public Review Board was denied. (Papalios Dep., Ex. C (March 8, 2016 Letter from the Office of the UAW President to Papalios ["Mar. 8, 2016 Appeal Letter"]), beginning at 929.) In the letter, the administrative assistant to the UAW president explained, once again, that the grievance was lodged with the wrong local union. (*Id.* at 929.) The letter further pointed out that Papalios had failed to request an appeal to the Public Review Board within thirty days of the December 7, 2015 letter, as required by Article 33, Section 4(c) of the UAW International Constitution. (*Id.* at 929-30.) The appeal to the Public Review Board was, therefore, untimely. (*Id.*)

Papalios filed the present lawsuit on September 7, 2016 against GM and Local 1714. In his complaint, he alleges that GM breached the terms of the SEPO because it "should have alternated hiring Delphi employees with the hiring of persons off the street." (Compl. ¶¶ 7, 9.) Papalios claims that had GM adhered to the SEPO and alternated its hiring between Delphi and new hires, he would have been assigned a seniority date earlier than June 30, 2008. (*Id.*) He further claims that Local 1714 unilaterally withdrew his grievance, constituting a breach of its duty to fairly represent him. (*Id.* ¶¶ 8, 10.) In their summary judgment motions, defendants posit that Papalios' action is time barred, that he failed to exhaust his administrative and internal

remedies, and that there are no genuine issues of material fact which, if accepted as true, would entitle Papalios to relief on the merits of his claims against either defendant.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

An opposing party may not rely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing summary judgment motions, the Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992) (citation omitted). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*. (citation omitted).

### III. DISCUSSION

### A.      § 301/Fair Representation Hybrid Claims

Papalios' federal action against GM and Local 1714 is "commonly referred to as a 'hybrid § 301/fair representation' claim." *Flatford v. Int'l Union United Auto., Aerospace and Agric. Implement Workers of Am.*, 652 F. App'x 409, 412-13 (6th Cir. 2016) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983)). "In [a]

hybrid suit under § 301 of the [LMRA], to recover against *either* the [c]ompany or the [u]nion, [the union member/employee] must show that [1] the [c]ompany breached [an agreement] *and* [2] the [u]nion breached its duty of fair representation." *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559-60 (6th Cir. 1990) (quotation marks and citations omitted) (emphasis in original); *see Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (same) (citation omitted); *Vencl v. Int'l Union of Operating Eng'rs, Local 18*, 137 F.3d 420, 424 (6th Cir. 1998) (citation omitted). "If both prongs are not satisfied," the union member cannot succeed against either the company or the union. *Garrish v. Int'l Union United Auto., Aerospace and Agric. Implement Workers of Am.*, 417 F.3d 590, 594 (6th Cir. 2005) (citing, among authority, *Bagsby v. Lewis Bros. of Tenn.*, 820 F.2d 799, 801 (6th Cir. 1987)); *see Garrison*, 334 F.3d at 538 ("The two claims are 'inextricably interdependent[,]'" and a plaintiff must prove both violations to succeed against either party.) (quoting *DelCostello*, 462 U.S. at 164).

### B.  Papalios' Action is Time-Barred

Section 10(b) of the NLRA provides in relevant part:

> [N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the [NLRB][.]

29 U.S.C. § 160(b). "This statute of limitations is borrowed from—and applies to—breach of collective bargaining agreement claims against employers, as well as fair representation claims against unions. The Supreme Court, therefore, has determined that a 'hybrid Section 301 claim' must be filed within six months of the alleged breach." *Dudich v. United Auto. Workers Local Union No. 1250*, 454 F. Supp. 2d 668, 674 (N.D. Ohio 2006) (quoting *DelCostello*, 462 U.S. at 169); *see Martin v. Lake Cnty. Sewer Co., Inc.*, 269 F.3d 673, 677 (6th Cir. 2001) (citation omitted); *Bloedow v. CSX Transp., Inc.*, 319 F. Supp. 2d 782, 786 (N.D. Ohio 2004) (citation

omitted).

"'Such a claim accrues when an employee discovers, or should have discovered with exercise of due diligence, acts giving rise to the cause of action.'" *Garrish*, 417 F.3d at 594 (quoting *Wilson v. Int'l Bhd. of Teamsters*, 83 F.3d 747, 757 (6th Cir. 1996)). While "[t]he determination of the accrual date is an objective one: the asserted actual knowledge of plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning the accrual of their right to sue." *Noble v. Chrysler Motors Corp., Jeep Div*., 32 F.3d 997, 1000 (6th Cir. 1994) (quotation marks and citation omitted); *see Dudich*, 454 F. Supp. 2d at 675 ("A plaintiff, however, is 'not required to sue on a hybrid claim until . . . [the plaintiff] reasonably should know that the union has abandoned [his or her] claim.'") (quoting *Wilson*, 83 F.3d at 757). Further, "a hybrid § 301 action accrues against the company when it accrues against the union." *Moore v. United Auto., Aerospace, Argic. Implement Workers of Am. Int'l, Union Local 598*, 33 F. App'x 165, 167 (6th Cir. 2002) (citing *Fox v. Parker Hannifin Corp*., 914 F.2d 795, 803 (6th Cir. 1990)).

The time for filing a § 301 hybrid claim may be tolled while "union members are engaged in a good faith attempt to exhaust their internal remedies[.]" *Flatford*, 652 F. App'x at 413 (citing *Dunleavy v. Local 1617, United Steelworkers of Am*., 814 F.2d 1087, 1091 (6th Cir. 1987) (further citation omitted)). However, the statute of limitations is not tolled "during the time an employee pursues internal union remedies that are completely futile." *Garrish*, 417 F.3d at 595 (citing *Robinson v. Cent. Brass Mfg*. Co., 987 F.2d 1235, 1239 (6th Cir. 1993)). In other words, there is no tolling after a plaintiff "reasonably should know that the union has abandoned" his claim. *Wilson*, 83 F.3d at 757 (citation omitted); *see Robinson*, 987 F.2d at 1242 ("in order

for the statute of limitations to be tolled, the internal union appeal must be able to afford [the employee] *some* relief") (emphasis in original). "'[W]hether to toll the limitations period is a question within the discretion of the district court.'" *Garrish*, 417 F.3d at 595 (quoting *Robinson*, 987 F.2d at 1239).

Papalios filed his complaint on September 7, 2016; accordingly, it will be timely filed only if his claims accrued on or after March 7, 2016. If Papalios's claims accrued before then, his complaint is time-barred unless he did not discover, or could not have discovered through the exercise of due diligence, that the acts causing his alleged injuries occurred prior to March 7, 2016.

It is the position of GM and Local 1714 that Papalios' claims accrued years before he filed suit. (GM MSJ at 694-95.) GM notes that Papalios believed at the time of his hire in 2008—and certainly by the time he filed the 2008 Grievance with Local 1112 on November 17, 2008—that GM had violated the terms of the SEPO, resulting in a loss of benefits to Papalios. Local 1714 underscores the fact that Papalios testified that he knew before he filed the 2011 Grievance that Local 1714 had failed to follow through with its alleged promise to prosecute his 2008 Grievance, as Papalios filed a ULP addressing that very issue. Instead, he waited nearly seven years after the assignment of his seniority date by GM and more than two years after he filed his unfair labor charge with the NLRB before filing suit. (Local 1714 MSJ at 175-76; *see* GM MSJ at 694.) They conclude that "[t]here is no question that [Papalios] knew or should have known of adverse actions by GM or Local 1714 well more than [six] months prior to the filing of his [c]omplaint." (Local 1714 MSJ at 176; *see* GM MSJ at 695.)

Papalios insists that the six month statute of limitations was tolled until March 8, 2016—

the date in which he received notice from the UAW that it would not submit his appeal to the Public Review Board—while he pursued internal union remedies. Initially, defendants respond that there is nothing to toll. Because the six month clock ran before Papalios ever filed the 2011 Grievance, he cannot use the pursuit of subsequent internal remedies to toll an already expired limitations period. *See, e.g., Dudich*, 454 F. Supp. 2d at 677 (filing of second grievance cannot serve to "revive an already expired statute of limitations").

This argument has merit. Still, even if the Court could look past the obvious delay and Papalios' own testimony regarding when he was aware that Local 1714 had allegedly abandoned his claim, and viewing the evidence in a light most favorable to Papalios as the non-moving party, the Court finds that Papalios is certainly not entitled to the benefit of tolling beyond December 7, 2015. On that date, he was advised by the administrative assistant to the UAW president, in no uncertain terms, that his grievance could not be pursued because it had been filed with the wrong local union. (Dec. 17, 2015 Appeal Letter at 933-34 ["Therefore, in light of the above and the record, and pursuant to the authority granted this office in Article 33, Section 2(b) of the International Constitution, I have concluded that the interpretation of the UAW-GM Department relative to this matter couldn't be more clear. Your request to have Grievance No. C1127143 placed back in to the grievance procedure is denied."].) It was, or should have been, abundantly clear to the reasonable person that the UAW believed that it could afford Papalios no relief, and that it had abandoned his grievance and would take no further action on his behalf. The fact that he continued to pursue futile internal union appeals cannot serve to toll the statute of limitations. *See Garrish*, 417 F.3d at 595 (no tolling where internal appeals were futile); *Noble*, 32 F.3d at 1002 (plaintiffs should have known of their causes of action sometime after the

union steward refused to pursue their grievance); *see, e.g., Flatford*, 652 F. App'x at 413 ("nothing about [the union president's] letter was equivocal or could be interpreted to lead a reasonable individual to believe that the matter was still pending"); *Beck v. Caterpillar Inc.*, 855 F. Supp. 260, 263 (C.D. Ill. 1994) (letter from UAW president formally notifying plaintiff that his intra-union appeal was denied and that the UAW would take no further action on his behalf ended any tolling of six month statute of limitations).[4]

Even if the December 7, 2015 letter did not put Papalios on notice of the UAW's decision to abandon his claim, Papalios cannot claim that he continued to pursue his internal remedies in good faith through March 8, 2016, as he failed to timely appeal to the Public Review Board. Papalios did not seek review of the December 7, 2015 decision until February 23, 2016, more than 60 days after he received notice from the administrative assistant to the president that the UAW would not reinstate his grievance. (Feb. 23, 2016 Letter at 93.) According to the terms of the relevant collective bargaining agreement, Papalios was required to seek review within 30 days of the date of that decision. (*See* Mar. 8, 2016 Appeal Letter at 930.) Papalios' untimely efforts to continue to pursue internal remedial measures cannot toll the six month statute of limitations. *See DeMott v. UAW Int'l Union*, No. 09-10180, 2011 WL 824488, at *13 (E.D. Mich. Mar. 3, 2011) ("It is well-established that the statute of limitations period is equitably tolled only during the time period when the plaintiff is *diligently* pursuing his or her internal union remedies.") (citing *Howell v. Gen. Motors Corp.*, 19 F. App'x 163, 167-68 (6th Cir. 2001)

---

[4] Papalios actually relied upon *Beck*. (Papalios Opp'n at 1102). The other case he cited in support of his position that his § 301 hybrid claim was timely—*Proudfoot v. Seafarer's Int'l Union*, 779 F.2d 1558 (11th Cir. 1986)—is equally unavailing. *Proudfoot* involved a question of when the employee knew or should have known of the union's final action. *Id*. at 1559. Because the plaintiff was fired before the union took its final action on his grievance, he was, therefore, unaware of the ruling. Consequently, the Eleventh Circuit, upon reconsideration, held that it had erred in concluding that the plaintiff's cause of action accrued on that date in which the plaintiff was discharged. *Id*.

(emphasis added)).

## C. Papalios' Claims Fail on the Merits

Given the clear untimeliness of this action, the Court need not reach the merits of Papalios' claims against GM and Local 1714. Nonetheless, if the Court were to entertain defendants' motions on the merits of Papalios' claims, defendants would still be entitled to summary judgment.

### 1. Papalios cannot establish a breach by GM

As set forth above, and as required by the SEPO, GM developed and implemented a plan to offer certain employment opportunities to employees of Delphi and two other companies. (Wilson Aff. ¶ 7.) According to GM, at the conclusion of the hiring period, GM was able to certify that its overall hiring ratio, including its ratio at its Lordstown Plant, "met the one to one standard set forth in the SEPO."[5] (*Id.* ¶ 10.)

Because GM has come forward with evidence that it complied with the SEPO, Papalios is required to come forward with competent evidence that, if believed, would create a genuine issue of material fact and warrant a trial on this issue. Fed. R. 56(c)(1); *Celotex*, 477 U.S. at 322. It is Papalios' position that GM breached the SEPO by failing to alternate between displaced workers and new hires and that he has evidence that demonstrates this failure. (Papalios Opp'n at 1098.) Specifically, he offers as support a document he refers to as a "manpower list" that is

---

[5] According to his affidavit, Joseph Wilson has been employed in the capacity of Labor Relations/Employee Placement with GM since 1986, and that his duties include placement of GM "employees and new hires, as well as handling labor negotiations and contract administration." (Wilson Aff. ¶¶ 1-2.) He further avers that, in his role as Labor Relations/Employee Placement, he "was involved in and ha[s] first-hand knowledge of the process used by [GM] to comply with the SEPO hiring requirements." (*Id.* ¶ 8.)

approximately 27 pages of lists of individual names, dates, job classifications, shifts, and various other information. (Doc. No. 39, Ex. 2 ["Manpower Report"], beginning at 1116.) Papalios believes that GM new hires can be identified on the Manpower Report by virtue of the fact that they have the same company seniority date and plant seniority date. (Papalios Opp'n at 1097.) According to Papalios, the Manpower Report shows that "GM hired large blocks of new hires instead of alternating between the two pools of job seekers (displaced union employees and new hires off the street)." (*Id*.) Papalios' position is untenable for two reasons: (1) the evidence he relies upon is incompetent, and (2) even if proper, the evidence does not demonstrate a breach of the SEPO.

### a. Unauthenticated Document

Rule 56 requires a party asserting that a fact is genuinely disputed to support that assertion by relying on affidavits or other admissible evidence. Fed. R. Civ. P. 56(c)(1)-(2). As such, a court should not consider evidence offered in defense of a summary judgment motion that has not been properly authenticated. *See Apex Energy Grp., LLC v. Apex Energy Solutions of Cincinnati, LLC*, No. 1:12-cv-466, 2014 WL 3667754, at *2 (S.D. Ohio July 22, 2014) (ruling that an unauthenticated website printout cannot be considered to create a genuine issue of material fact) (citations omitted); *Blue Grp. Res., Inc. v. Caiman Energy, LLC*, No. 2:11-cv-648, 2013 WL 12178525, at *3-4 (S.D. Ohio July 22, 2013) (declining to consider unauthenticated deposition transcripts on summary judgment).

Papalios offers the Manpower Report without an authenticating affidavit. Nonetheless, he suggests that he can still rely upon the document because it is "self-authenticating" under Rule 901(b)(4) of the Federal Rules of Evidence. Rule 901(b)(4) provides that the "'[a]ppearance,

contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances[,]'" may satisfy authentication requirements. *See United States v. Jones*, 107 F.3d 1147, 1150 (6th Cir. 1997) (quoting Fed. R. Evid. 901(b)(4)). For instance, in *United States v. Shrout*, 298 F. App'x 479, 482 (6th Cir. 2008), a planner was properly self-authenticated under Fed. R. Evid. 901(b)(4) because it was seized from the party's vehicle, had the party's personal notes and information known only to that party contained therein, and the entries in the planner coincided with aspects of the party's business. In contrast, a document linked to a party by a mere listing of the party's name, telephone number, and address could not be authenticated under the rule because, "there is nothing distinctive about that information. *Anyone* could have learned [the party's] phone number and address and then produced the document." *United States v. Mitts*, 396 F. App'x 296, 302 (6th Cir. 2010) (emphasis in original).

In the present case, there is nothing in the Manpower Report that provides any corroborating context. The document is in the vein of the document considered in *Mitts*: a list of names and numbers and nothing more. It was not prepared on company letterhead, and the names "GM," "General Motors," or "Delphi" appear nowhere on the document. Papalios points to nothing distinctive—no trademark, no address, no facsimile header—that would suggest that this document was generated by GM. Further, Papalios offers no information on the origin of the document, or how it came into his possession. Clearly, this document cannot be considered self-authenticating under Fed. R. Evid. 901(b)(4), and it cannot be considered on summary judgment.

In the face of GM's fully supported summary judgment motion, Papalios was required to come forward with competent evidence that generated a genuine issue of material fact. Having

failed to do so, Papalios has no basis to argue that GM failed to follow the SEPO agreement.

### b. There Was No Breach

Even if the Manpower Report was both self-authenticating and evidence that GM hired blocks of new hires instead of strictly alternating between Delphi employees and new hires, the evidence would not establish that GM breached the SEPO. "Substantive federal law governs the enforcement and interpretation of collective bargaining agreements under Section 301." *Lemon v. BWX Tech., Inc*., 442 F. Supp. 2d 460, 469 (N.D. Ohio 2006) (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456, 77 S. Ct. 912, 1 L. Ed. 2d 972 (1957)). "Traditional rules of contract interpretation, however, are applied as long as their application is consistent with federal labor policies." *Id*. (citing *Lincoln Mills*, 353 U.S. at 457); *see Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 489 (6th Cir. 2009) (When interpreting a labor agreement, the court must start with its explicit language, and "[g]eneral principles of contract interpretation should guide a district court's interpretation of" that language) (quotation marks and citation omitted).

Under Ohio law, a court is to examine the contract as a whole, looking to the plain and ordinary meaning of the language of the contract, unless another meaning is clearly apparent from the agreement. *Sunoco, Inc. (R & M) v. Toledo Edison Co*., 953 N.E.2d 285, 292 (Ohio 2011). "Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." *City of St. Marys v. Auglaize Cty. Bd. of Commrs*., 875 N.E.2d 561, 566 (Ohio 2007) (quotation marks and citation omitted). Further, the court is required, if possible, "to give effect to every provision of the contract." *Sunoco*, 953 N.E.2d at 295 (citations omitted); *see Savedoff v. Access Grp., Inc*., 524 F.3d 754, 763 (6th Cir. 2008) ("In determining whether contractual language is ambiguous, the contract must be construed as a whole, so as to

give reasonable effect to every provision in the agreement.") (quotation marks and citations, including internal citations, omitted). According to Papalios, reasonable jurors could find that the "one for one" language required GM to alternate between the two pools of candidates. Because he has come forward with what he believes is a reasonable interpretation of the SEPO, he insists that he has generated an unresolved question of fact that makes summary judgment for GM inappropriate. Papalios' position fails because the SEPO specifically reserved for GM the task of developing and implementing hiring protocols. While GM could have used a strict alternating approach to hire under the SEPO, it was not required to do so. In fact, it could have employed a variety of hiring methods, including alternating between every two hires or hiring all new hires on one day and displaced workers on another, to meet the "one for one" language in the SEPO. There is nothing in the SEPO that required a strict one to one alternating approach suggested by plaintiff. Further, the plain language of the agreement leaves the details of the hiring process to GM's discretion.[6] To hold otherwise would both ignore the clear and unambiguous language of the contract and violate a basic tenant of contract law that the court must give effect, where possible, to every contract provision. *See Savedoff*, 524 F.3d at 763; *Sunoco*, 953 N.E.2d at 295.

The language cited by Papalios does not create a duty to alternate between new hires and Delphi employees, and there is no contract provision that vests in Delphi employees the right to insist upon such an approach. Papalios' belief that the hiring should have followed a

---

[6] GM's discretion was not unfettered, as the SEPO required GM to develop and implement a hiring plan that was "consistent with the provisions of the collective bargaining agreements that GM [had] in effect." (SEPO, § 12, at 873.) Papalios has not suggested that GM's plan violated the provisions of any of the relevant collective bargaining agreements.

strict alternating pattern is simply not supported by the SEPO.[7] Because this prong of the §

301/fair representation hybrid action fails, both defendants would be entitled to summary

judgment for this additional reason. *See Garrish*, 417 F.3d at 594.

### 2. *Papalios cannot establish a failure to represent*

A union breaches its duty of fair representation only when its "conduct toward a member

of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386

U.S. 171, 190, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967) (citation omitted). "[A] union's actions are

arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the

union's behavior is so far outside a wide range of reasonableness, as to be irrational." *Air Line*

*Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67, 111 S. Ct. 1127, 113 L. Ed. 2d 51 (1991)

(quotation marks and internal citation omitted). To be found discriminatory, the union's conduct

must be "invidious, or 'based upon impermissible or immutable classifications such as race or

other constitutionally protected categories, or arises from prejudice or animus.'" *Dragomier v.*

*Local 1112 Int'l Union United Auto. Aerospace & Agric. Implement Workers of Am*., 64 F. Supp.

3d 1033, 1054 (N.D. Ohio 2014) (quoting *Considine v. Newspaper Agency Corp*., 43 F.3d 1349,

1359-60 (10th Cir. 1994)). Finally, "a union acts in bad faith if 'it acts with an improper intent,

purpose, or motive . . . encompass[ing] fraud, dishonesty, or other intentionally misleading

conduct.'" *Id*. at 1055 (quoting *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613

---

[7] In his deposition, Papalios offered a different opinion as to how GM should have conducted its hiring under the SEPO. Specifically, he testified that GM was supposed to hire *all* Delphi employees first. (Papalios Dep. at 25 ["They can hire whoever they want. But they were supposed to hire us first."].) In support of this new position, Papalios offers only his opinion that, "[t]hat's the way a union works." (*Id*.) Of course, there is nothing in the SEPO that would give displaced Delphi employees *priority* over new hires or require their hire ahead of any new hires.

F.3d 609, 619 (6th Cir. 2010)). "In order to successfully defend against a motion for summary judgment on a duty of fair representation claim, the plaintiff must point the court to evidence in the record supporting at least one of these elements." *Merritt*, 613 F.3d at 619 (citing Fed. R. Civ. P. 56(e)).

Papalios has not pointed to any evidence of discrimination based on race or other constitutionally protected categories, or to any evidence of prejudice or animus. His sole basis for claiming discrimination is that former Delphi employees who were originally represented by the UAW were permitted to keep their corporate seniority and he was not. (Papalios Dep. at 35.) However, when asked to identify a single individual who was treated differently, he was unable to do so. (*Id.*) Papalios also fails to offer any evidence that Local 1714 acted in an arbitrary manner. The record is clear that Local 1714 was not a party to the SEPO agreement, and Local 1714 was not responsible for the hiring of GM employees. (Doc. No. 32-15 (Affidavit of Robert Morales ["Morales Aff."]) ¶¶ 15, 16, 18.)[8] Accordingly, hiring pursuant to the SEPO agreement cannot be the subject of a grievance under Local 1714's collective bargaining agreement. (*Id.* ¶ 16.) Since the UAW advised that there was no contract provision allowing a grievance by Local 1714 for a violation that occurred while Papalios was a member of Local 1112, it was wholly rational for the grievance to be denied and not pursued by Local 1714.

Still, Papalios advances the theory that Local 1714 breached its duty of fair representation by handling the 2011 Grievance in a manner that was perfunctory, indifferent, and "grossly

---

[8] In the face of a fully supported summary judgment motion, Papalios' unsupported belief that Local 1714 had "a little bit to do with [hiring under the SEPO]" cannot generate a genuine issue of material fact. (Papalios Dep. at 23; *see also id.* at 48 ["They (Local 1714) talk about things"].) The only evidence Papalios offers in support of his belief is the Manpower Report, which, as the Court has already noted, is not properly submitted on summary judgment and does not demonstrate that any local, let alone Local 1714, had a role in hiring under the SEPO.

deficient[.]" (Papalios Opp'n at 1099.) He claims that Local 1714 merely "went through the motions" in handling his grievance and failed to consider the Manpower Report. He suggest that a review of this report "would have shown Local 1714 the merit in Papalios' grievance." (*Id*. at 1100, citing Papalios Dep. at 60.) As set forth above, the Manpower Report does not demonstrate a violation the SEPO by GM, and would not, therefore, have alerted Local 1714 to the purported merits of Papalios' claims. Further, Papalios cannot demonstrate that Local 1714 acted in bad faith in failing to consider a document whose source and origins are unknown even to Papalios.[9]

Papalios cannot show that Local 1714 acted "arbitrary, discriminatory, or in bad faith" in the handling of his grievances. Therefore, Local 1714 would be entitled to summary judgment on Papalios' fair representation claim.

---

[9] Papalios argues that defendants are estopped from maintaining that Local 1714 did not breach its duty of fair representation because Local 1714 misrepresented its willingness to pursue his grievance. (Papalios Opp'n at 1103-05, citing, among authority, *Apponi v. Sunshine Biscuits, Inc*., 809 F.2d 1210 (6th Cir. 1987)). There are several problems with this argument. First, Papalios fails to raise an estoppel claim in the complaint, and may not do so on summary judgment. Second, in the face of a fully supported summary judgment motion, which includes union correspondence wherein Local 1714 advised Papalios that he had sued the wrong union, Papalios cannot rely on vague deposition testimony that some unidentified individual, on some unidentified date, made a misrepresentation. Finally, even if the argument was sufficient to defeat summary judgment as to the fair representation prong of the § 301 hybrid action, it would not serve to defeat GM's summary judgment arguments on the merits or both defendants' arguments as to the issue of timeliness. *See generally Bridgeport Music, Inc. v. Boutit, Inc*., 101 F. App'x 76, 81 (6th Cir. 2004) (claims of misrepresentations did not constitute equitable tolling because plaintiffs actually discovered the infringement and could not, therefore, rely on misrepresentations); *see, e.g., Perez v. Roadway Express, Inc*., 281 F. Supp. 2d 936, 940 (N.D. Ohio 2003) (claims of union misrepresentations were not relevant to arguments that the hybrid action was time-barred).

## IV. CONCLUSION

For all of the foregoing reasons, defendants' motions for summary judgment (Doc. Nos. 32, 34) are granted. This case is closed.

**IT IS SO ORDERED**.


Dated: December 4, 2017

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**